Good morning, Your Honor. Stephen Lubliner on behalf of Appellant Gerard Hood, Jr. May it please the Court, I have two issues today, the liability for firearm discharge and the sentencing disparity issue. On firearm discharge, there were two possible theories for upholding it, aiding and abetting, and foreseeability under conspiracy theory. Mr. Hood may have aided and abetted use and carrying. He may have aided and abetted brandishing. But under the Court's Jones decision that I cite in the reply, he had to have aided and abetted the discharge for the enhancement to be upheld on that theory. He clearly did not. Mr. Fleming needed neither help nor encouragement to pull the trigger that day. He jumped on the postal carrier, though, didn't he? Excuse me, Your Honor? Your client assaulted the postal carrier? Well, there was some dispute at trial as to whether he had actually hit the mailman or Mr. Dixon had hit the mailman. I believe from the victim's testimony, it sounded like Mr. Dixon, the man on the left facing the front of the truck, had. I think for sentencing purposes, it probably was conceded that Mr. Hood had, since there was all the discussion about whether or not the broken teeth were permanent and life-threatening injury. But there was no inter – there was no relationship between that. There was no, I'm going to do, assuming Mr. Hood did hit the mailman, there was no I did this, now you do that kind of exchange testified to. Of course, that's the way it happens in all kind of gang-related assaults or robberies. They don't all say, you hit him this way and I'll hit him that way. They just jump on somebody and go to it, right? Well. I mean, that's just a standard practice. Maybe there is no testimony that this was a criminal street gang. There was no gang expert. But as codefendants, some of them testified against him, right? Oh, three of them. Yeah, sort of the first to squeal gets the deal here. Excuse me? The first to squeal gets the deal. They rolled first. Well, the first, second, and third to squeal got the deal, as it turned out, to get  So on the other theory of discharge, it was foreseeability pursuant to a conspiracy. Which recounts 1, 2, and 3. There was the conspiracy. Now, in this Court's opinion in Zelaya, they say basically there is no, for want of a better term, strict liability concept of foreseeability regarding an enhancement in light of lesser conduct or an underlying crime. So foreseeability of discharge does not automatically flow from foreseeability of a robbery or the foreseeability or for the fact that there was a gun was carried or even that a gun was brandished. So you have to look at the actual circumstances of the crime and the cases tell us what kind of circumstances are where discharge is foreseeable. And it seems to be primarily when the robbers commit a crime where some resistance can be anticipated, when they rob the bank, when they rob the credit union, when they rob a car. Well, except for you have to look at the facts in the light most favorable to the government here when you're making a substantial evidence attack. Yes. And it seems here that in the evidence most favorable, the four men get together at the Deliverance Temple apartment complex and they decide they're going to commit a robbery. And then they decide they need a gun. So then they all get in the car together and they go get a gun from Chewy, I guess. Fleming goes in, gets a gun, but everyone knows that they've got a gun. And they kind of go around and they decide for the perfect robbery and why they thought that a postal carrier would be a good robbery victim. I'm not really sure. But at the point, the guy that they rob, he fights, he gets beat up, and then you have a shooting. Why isn't in the light most favorable, why isn't that foreseeable? Well, it's not like no one knew that there was someone there that they didn't know had a gun. They decided they needed a gun to commit this crime. Now, if you need a gun to commit the crime, what are, why do you need a gun if there's not going to be, you know, if you decide to go to guns, it's pretty foreseeable that you're going to use the gun. Well, then there would be no breakdown between, there would just be use of a gun, I don't know, gets you 10 years potentially. But looking at the evidence as Your Honor describes it, I submit that the conspiracy did not end at Deliverance Temples. And it did not end, or the plot of the crime did not end when they picked the gun up from Chewy, and Chewy, you know, made his cavalier remarks. The plot, the corroboree was taking shape through that hour when they kept driving around to, through Oakland and the East Bay and figuring out who it was they were going to rob in the very event. I just want to try to get this, if I'm looking at this on a continuum, you're almost saying, like, the closer they get to pinpointing the victim, that somehow the foreseeability dissipates. That's almost what you're saying. Well, I think that's right. And I think the cases support that view when you say, who did they rob? They robbed the armored car. Of course, the armored car is teeming with guards. What else happened? They cased the credit union security arrangements in the other case that we cite. So here again, you know, it's all taking shape on the fly, and they ultimately decide, no, we're only going to talk about a drug dealer, apparently. And that's, if they had robbed a drug dealer, we'd have a stronger, the government would have a stronger case. But ultimately, they decided to rob the mailman, and not the mailman on the busy street where conceivably a police car might drive by or someone might choose to get involved. They robbed the mailman on the isolated street where no one apparently. Is there any evidence that they knew that the mail people aren't armed, for example? Is there a discussion of that? There's no testimony on what they thought, you know, what kind of resistance they thought they would encounter. But just intuitively to me, it seems like an isolated mailman is. So then if we go on the spectrum and we rob Mother Teresa, albeit that rest in peace, then Mother Teresa, it couldn't be foreseeable at all, because everyone knows Mother Teresa never would have had a gun? Is that? That well? Well, you should be attaching the foreseeability to the victim. Well, the entire circumstances of the crime have to be examined, as they usually are, when you're analyzing foreseeability. So ultimately, the victim that they choose fits in significantly to the analysis of foreseeability. Well, you know, I agree with you that you can't exclude it. But you can't kind of go all the way along the continuum, gun, gun, gun, pick it up, chat, chat, chat, chat, chat, and then all of a sudden, boom, now the gun, there's kind of like the intervening cause becomes a nice victim. Because that ignores the fact that you've had all this gun business all the way up to it. So I guess the real hurdle I think you have is the standard of review. Because you pose a possible argument. But if you look at everything in the light most favorable to the government, how do you get over that hurdle? Well, there really isn't any defense case in terms of standard of review. And I don't know if Your Honor is talking about beyond reasonable doubt versus preponderance as a sentencing issue. But either way, it's the government's case. There are not really many inconsistencies. There's some variation in what Shuey supposedly said. It all adds up to me that they drive around, they stop at the flower shop, no, no, no, no, and they talk about a drug dealer, no, no, no, no. And then ultimately, they settle on the isolated mailman unwisely in terms of how much money they can rationally expect to get, you know, from his person, which seemed to be what they went after, as opposed to his mailbag, but very rationally in terms of getting away without a fight. There never was any conversation among them by saying, well, forget that idea of putting a gun on anybody, we won't need it, or anything to that nature, was there? Well, there was no conversation among them before that, but also if you look at what happened at the scene with what he was What did Shuey say? What was the conversation about what you call the unfortunate remarks about the gun? Well, there was no conversation. Shuey said something about if you're going to shoot someone, put a body on it or something like that. And there's no evidence that anyone responded to Shuey. There's no evidence But it was said in front of everyone, right? So this is a little of the flavor of the adventure here. Well, it wasn't entirely clear were the windows open, were the windows closed, and whether Hood, Mr. Hood, heard them. I'm going to assume that Mr. Hood could have heard Shuey say this, but he didn't respond. Fleming didn't respond. There's no evidence that anybody responded to this, no evidence that anybody was talking about what Shuey said for the following hour, and so on. And if you look at what happened at the scene Do you want to save some time for rebuttals? Just one quick point. What happened at the scene? Fleming shot the man in the leg. Everybody ran. No one said, what are you doing? Remember what Shuey said? They ran. And Fleming was left, you know, with his own demons to do what he was going to do. I will save a little time. Thank you, Your Honor. May it please the Court. Kirsten Ault for the United States. Although the appellant challenges his mandatory consecutive 10-year sentence under the guise of sufficiency of the evidence, in fact, this is a sentencing issue. The Supreme Court held in Harris v. United States, and this Court reaffirmed in United States v. Dare, that the issue of whether a person should be held liable for the discharge of a firearm in the course of a violent crime is a sentencing factor to be determined by the district court. In this case, because of the uncertainty regarding the different roles in determining sentencing factors versus elements of the offense versus something that's in between, that followed Booker, and especially in light of this Court's statement in Dare that although the Court could not overrule Harris, Harris was in doubt after Booker. The government chose to submit the issue. You're saying it's just a sentencing issue, but don't we have a substantial evidence challenge, too? Your Honor, the defense challenges it as substantial evidence. However, the mere fact that the question was submitted to the jury doesn't change the state of the law.  The judge did find that it was reasonably foreseeable to Defendant Hood that the gun would be discharged during the course of the robbery, and that was not an abuse of discretion. There was ample evidence that the defendant knew that Mr. Fleming had a gun, and it was reasonably foreseeable that Mr. Fleming would discharge that gun in the course of the assault of the postal worker. And that is another important point in this case. What the defendant was convicted of was not a conspiracy to rob the postal worker, but a conspiracy to assault the postal worker. And as the district court found at sentencing, after reviewing, after listening to all of the evidence at trial, he stated that this was a plan not merely to go and take money from someone, but a plan to go and hurt someone. These young men were out to commit an assault, and that's exactly what they did. And as Your Honor has noted, Mr. Hood heard the person who gave Mr. Fleming the gun say, put a body on it, which everybody involved stated that they clearly knew meant kill somebody with this gun. Hood was sitting right next to Fleming when Fleming pulled the clip out of the gun, checked to make sure it was loaded, and racked the gun back to put a chamber to put a bullet in the chamber so that it was ready, so it was ready to go and ready to be used. And then when the three men got out of the car and ran into the postal truck, Fleming used the gun to knock on the window to get the postal worker's attention. So throughout the entire course from the moment that they planned the robbery through the process of committing the assault, Mr. Hood knew that a gun was present, was going to be used, and that the person who had the gun was under orders to use it to shoot somebody. At what point did Hood punch this carrier? From the testimony of the three young men. Or did he do so? Excuse me, Your Honor? Or did he do so? He did do so, and actually the district court found beyond a reasonable doubt that he did punch the postal worker. Everybody who was in the car testified that afterwards they saw Hood shaking his hand and massaging it, as if he had just punched someone. Mr. Cannon, who wasn't even there, testified that he saw Hood doing the shaking motion with his hand as if his hand hurked. So the evidence establishes that Mr. Hood did punch the postal worker. He did that immediately before Mr. Fleming shot the postal worker. In fact, it's Mr. Hood who escalated the robbery into a full-scale violent assault by punching that postal worker. And that encouraged Fleming, emboldened him to actually take that shot. Mr. Fleming, the whole time that the robbery was going on, as the victim testified, had the gun on the victim's leg. He was not actually pointing it towards the victim's heart or his head. He was pointing it towards the victim's leg. And he didn't shoot the postal worker until after Mr. Hood took the step of escalating the crime, punching the postal worker in the face. Was this postal worker flailing about or trying to hit them or anything before this happened? According to the postal worker, what he had done immediately before this happened was take money out of his pocket, his shirt pocket, and hand it to Mr. Dixon. Just that $3 or something like that? It was $3. And after that, Mr. Hood reached around Mr. Dixon, punched the postal worker in the face. Mr. Fleming shot the postal worker in the leg. And then the three young men – the two of the young men run off. Mr. Fleming is still there pointing the gun at the postal worker. And it can be inferred that he was going to carry out the Chewy's instructions to put a body on the gun. Mr. Dixon comes back and pulls him away. Mr. Fleming's hesitancy in that moment and his decision to put the gun on the postal worker's leg as opposed to pointing it at the postal worker's heart, for example, indicates that he had perhaps some ambiguity about what he was going to do. Mr. Hood's decision to be the first one to commit violence against a postal worker encouraged and emboldened Mr. Fleming to take the shot. So under an aiding and abetting theory, under a reasonable foreseeability Pinkerton theory, Mr. Hood is absolutely responsible for Mr. Fleming's use of that gun. It seems strange that the person who fired the gun really got less time than Mr. Hood, right? He did, but that's because he was differently situated than Mr. Hood. Mr. Hood was the only one of these three who had a criminal history. So he was in a criminal history category of two. He's the only one of the four who did not accept responsibility for his actions.  So he started out with a properly calculated guideline sentence higher than any of the other individuals. He also did not cooperate with the United States. So there was no motion made to reduce his sentence. Even though there was no motion made to reduce his sentence, the district court acknowledged that it was perhaps unfair, perhaps unseemly, to have the person who actually shot the postal worker receive such a substantially lower sentence. And so under 3553A, the district court considered sentencing disparity and reduced the defendant's sentence by 15 months. The defendant's claim is that that was not enough. It was not an abuse of the discretion of the district court to consider the factor, put 15 months on his assessment of how much that was worth, but not more. There were legitimate differences between the situation of Mr. Fleming and Mr. Hood. The district court took those into account, followed the procedure outlined by this Court in Cardi and Zavala, properly calculated the guidelines, took into consideration the 3553A factors, and came up with a sentence that is substantively reasonable. Kagan, did you need, though, the co-defendants to prosecute Mr. Hood? The only evidence that was presented at trial was the testimony of the three co-defendants. Also, the testimony of Calvin Davis, to whom Mr. Hood had in some manner confessed the crime, and some phone records. And that is the only testimony that was presented at trial. So, yes, Your Honor, we did need the testimony. Why not the postal worker? I'm sorry. The postal worker also testified. However, because two of the men were masked and Mr. Hood was hiding behind the other two, the postal worker was not able to identify anyone. And I do apologize. There were also two eyewitnesses to the crime, but because the defendants were masked, they could not identify any of the three. So you really couldn't have made out a case without the co-defendants' testimony? No, Your Honor. And in addition, as stated at sentencing, Mr. Fleming provided, in addition to his testimony, he also provided assistance in identifying who Calvin Davis was and letting the government know where he could be found. So Mr. Davis' testimony was re-read to the jury at least twice during their deliberations. So he was very much a key witness, and Mr. Fleming was very much important in identifying him and finding him for trial. So were you both trial counsel? I was trial counsel. Appellate counsel was not. So, Your Honor, for the reasons that I have stated, as well as the reasons in our brief, we believe that the district court's judgment and sentence were correct and that they should be affirmed. Thank you. Thank you. You have 18 seconds, which you can't really say much in, so I'm going to give you a minute. Oh, thank you. Going in order, even if this is a sentencing issue, sentencing facts still have to be found by a preponderance of the evidence, so there is substantial evidence review, if only with that standard of review. The fact that Mr. Hood was convicted of assault on a Federal postal worker, I don't think that necessarily means that there was an agreement to actually hit the postal worker, as I assume Federal assault is similar to common law or State court assault and common law assault, that it is and involves threats, not necessarily physical contact. I assume there was no robbery charge because you can't – it's not a Federal crime to rob a Federal employee of his own money. That's my assumption. I haven't researched it, but that's just my gut on that. Mr. Fleming being emboldened, I think that is just speculation. Mr. Fleming testified the gun went off accidentally. The others testify that he came back in the car and said that the – he shot the man because he didn't have enough money. He didn't say, well, Hood got me going. So that's as far as Mr. Fleming, which leads into the sentencing issues as far as the disparity between Mr. Fleming and Mr. Hood. The different situation between Mr. Fleming and Mr. Hood is 22 to 27 months. That's accounted for by the three levels of acceptance of responsibility. Oh. Ginsburg. You've used all your time now, and I think we're well aware of the disparity. It's well briefed by you, and we're aware of the disparity, and the question will be the legal effect of that. Okay. Thank you very much, Your Honor. Thank you. The case of the United States v. Hood is submitted, and thank you both for your argument this morning.
judges: McKeown, Callahan, Siler